UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x
ADELAIDO GALEANA and ELEUTERIO
CALIXTO,                         :

              Plaintiffs,    :

       -against-              :

LEMONGRASS ON BROADWAY          :
CORPORATION, d/b/a LEMON GRASS
GRILL, and HANN LOW,            :

          Defendants.    :
--------------------------------x

**REPORT & RECOMMENDATION**

10 Civ. 7270 (GBD) (MHD)

**TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.:**


This lawsuit was filed by two men, Adelaido Galeana and Eleuterio Calixto, asserting claims for 1) denial of statutory minimum wages and overtime payments and 2) denial of spread-of-hours pay. Plaintiffs asserted these claims under provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. and the New York State Labor Law ("NYLL") § 190 et seq. that govern minimum employee compensation, as well as under Title 12 of New York's Compilation of Codes, Rules and Regulations (hereinafter N.Y. Comp. Codes R. & Regs.) §§ 142-2.4, 142-2.18 (2009), which governs spread-of-hours pay.[1] They press these

---

[1]Plaintiffs, while bringing the original and amended complaints as collective actions (Compl. ¶¶ 49-51; Am. Compl. ¶¶ 69-71), failed to move for collective action certification. Thus, we consider only the individual plaintiffs' claims. See Carrasco v. West Village Ritz Corp., 2012 WL 2814112, at *8 n.1 (S.D.N.Y.

claims against defendant Lemongrass on Broadway Corporation (the "corporate defendant"), which is said to have owned the Lemon Grass Grill[2] where the plaintiffs worked, and Hann Low (the "individual defendant"), who is said to have a controlling interest in Lemongrass on Broadway.

On September 21, 2010, plaintiff Adelaido Galeana ("Galeana") filed the original complaint (see Dkt. No. 1), and thereafter filed affidavits of service on the corporate and individual defendants. (Dkt. Nos. 3-4). On January 21, 2011, the complaint was amended to add Eleuterio Calixto ("Calixto") as a plaintiff (Dkt. Nos. 5-6), and plaintiffs again filed affidavits of service on both defendants. (Dkt. Nos. 7-8). After the Clerk of the Court certified that defendants had failed to respond to the complaint and were in default (see Clerk's Certificates of Default, dated July 8, 2011 (Dkt. No. 13, attached as Exs. 7, 8

---

July 11, 2012), report and recommendation adopted, 2012 WL 3822238 (S.D.N.Y. Sept. 4, 2012).

[2]In plaintiffs' papers in support of a motion for default judgment, specifically the Memorandum of Law, dated December 1, 2011 (Dkt. No. 10) ("Mem. of Law"), the Affidavit of Adelaido Galeana, dated Dec. 1, 2011 (Dkt. No. 11) ("Galeana Aff."), the Affidavit of Eleuterio Calixto, dated Dec. 1, 2011 (Dkt. No. 12) ("Calixto Aff."), and the Affirmation of Michael Faillace, dated Dec. 1, 2011 (Dkt. No. 13) ("Faillace Affm."), the name of the restaurant is represented as both "Lemongrass Grill" and "Lemon Grass Grill." Consistent with the case captions of all of plaintiffs' moving papers, we use "Lemon Grass Grill" throughout our analysis.

to Faillace Affm.)), plaintiffs moved for a default judgment. On April 16, 2012 the court granted the application for a default judgment (see Order, dated Apr. 16, 2012 (Dkt. No. 14)), and referred the case to us for an inquest into damages. (See Order of Referral, dated Dec. 10, 2012 (Dkt. No. 16)).

For the reasons that follow, we recommend that judgment be entered in favor of plaintiffs in the amount of $144,123.69 plus pre-judgment interest, and $12,245 in attorneys' fees and extra costs. We further recommend that defendants be held jointly and severally liable for the full amount of the judgment, pre-judgment interest, and attorney's fees and costs.

## I. Legal Standard

In the wake of defendants' default, we must accept as true the well-pleaded allegations of the amended complaint that are pertinent to liability. See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)); PAPS v. GME Entm't, Inc., 2012 WL 5873584, at *6 (S.D.N.Y. Nov. 19, 2012) (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)); Chen v. Jenna Lane, Inc., 30 F. Supp.2d 622,

3

623 (S.D.N.Y. 1988) (quoting 10A Charles Alan Wright et al., Federal Practice and Procedure § 2688 at 58-59 (3d ed. 1998)). We therefore rely on the relevant factual allegations found in the complaint and the additional affidavits filed by plaintiffs. See, e.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (citing Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993)); Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)). Nonetheless, since the allegations in the complaint must be "well-pleaded," we are required to examine whether those factual allegations, if deemed true, establish liability. Finkel, 577 F.3d at 84 ("[A] district court retains discretion [on default] . . . to require proof of necessary facts, and need not agree that the alleged facts constitute a valid cause of action.") (quoting Au Bon Pain Corp., 653 F.2d at 65).

For purposes of determining relief, we do not automatically accept the allegations of the complaint relating to damages. See, e.g., Greyhound Exhibitgroup, Inc., 973 F.2d at 158 (2d Cir. 1992) (citing Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)). Rather, plaintiffs must establish damages through

4

pertinent evidence, such as affidavits or live testimony, ensuring "that there was a basis for the damages specified in the default judgment." See Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111 (quoting Fustok, 873 F.2d at 40). See also Pineda v. Masonry Constr., Inc., 831 F. Supp.2d 666, 671 (S.D.N.Y. 2011); Wicaksono v. XYZ 48 Corp., 2011 WL 2022644, at *2 (S.D.N.Y. May 2, 2011), report and recommendation adopted, 2011 WL 2038973 (S.D.N.Y. May 24, 2011) (citing Lin v. Hayashi Ya II, Inc., 2009 WL 289653, at *2 (S.D.N.Y. Jan. 30, 2009), report and recommendation adopted, 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009)).


## II.  Factual Background


In plaintiffs' complaint, they allege the following:


Defendant Lemongrass on Broadway Corporation owned the Lemon Grass Grill, which was located at 2534 Broadway, New York, New York at all relevant times. (Am. Compl. ¶¶ 15-16; Galeana Aff. ¶ 4; Calixto Aff. ¶ 4). The individual defendant Hann Low controlled the corporate defendant and directly managed the operations of the restaurant, including the hiring and firing of staff as well as determinations as to compensation and other

terms of employment. (Am. Compl. ¶¶ 17, 19, 23). Defendants were thus plaintiffs' "employers" for purposes of the FLSA and NYLL. (Id. at ¶ 23).

Galeana worked for defendants from approximately August 1999 to April 2006 and for three weeks in July 2009. (Id. at ¶ 29; Galeana Aff. ¶ 5). Calixto worked for defendants from approximately February 10, 2005 to November 17, 2007. (Am. Compl. ¶ 45; Calixto Aff. ¶ 5). Plaintiffs were primarily employed as deliverymen, but Calixto also performed a number of other tasks at the restaurant, including distributing menus, cleaning, and taking care of small chores. (Am. Compl. ¶¶ 30, 44, 47; Calixto Aff. ¶ 7).

Plaintiffs further assert that they were required to work six or seven days per week and more than forty hours per week, but were not paid the appropriate minimum wage or overtime compensation. (Am. Compl. ¶¶ 60, 62; Galeana Aff. ¶¶ 9-11; Calixto Aff. ¶¶ 10-13). From approximately July 2004 to April 2006, Galeana worked from 12:00pm until 12:00am, seven days per week (Galeana Aff. ¶ 10), and for the approximately three weeks in July 2009 Galeana worked from 4:00pm until 11:00pm, six days per week. (Id. at ¶ 11). From February 10, 2005 until November

6

17, 2007, Calixto worked from 12:00pm to 11:00pm Fridays through Wednesdays, from 5:00pm to 11:00pm on Thursdays, and an additional half hour two to four days per week. (Calixto Aff. ¶¶ 11-12).

From July 2004 to April 2006, Galeana was paid $22 per day (Am. Compl. ¶ 37; Galeana Aff. ¶ 13), and for the three weeks in July, he was paid $14 per day. (Am. Compl. ¶ 38; Galeana Aff. ¶ 14). Calixto was paid $22 per day throughout his employment (Am. Compl. ¶ 54; Calixto Aff. ¶ 15). Defendants always paid plaintiffs their wages in cash. (Am. Compl. ¶ 65; Galeana Aff. ¶ 12; Calixto Aff. ¶ 14).

Plaintiffs allege that defendants failed to post any notices in their restaurants or to provide any information advising the employees of their minimum-wage and overtime rights, as required by the FLSA and NYLL. (Am. Compl. ¶¶ 42, 58, 68; Galeana Aff. ¶¶ 22-23; Calixto Aff. ¶¶ 24-25). Similarly, although plaintiffs earned tips from customers they served, defendants never informed them that the tips would be included in their wages, never posted any notices regarding tip information, and made no accounting of the tips received, as required under the FLSA and NYLL. (Am. Compl. ¶¶ 40, 56).

7

As for other pertinent practices at the restaurant, defendants also failed to pay plaintiffs additional spread-of-hours compensation for days on which they worked more than ten hours, as required by the NYLL. (Id. at ¶ 60; Galeana Aff. ¶ 17-18; Calixto Aff. ¶ 19-20).

## III. Analysis

### A. Minimum Wage and Overtime

Both the FLSA and the NYLL require that employers pay their employees at least a defined hourly minimum wage. 29 U.S.C. § 206(a); NYLL § 652(1). Federal and state law also mandate that employers pay their employees time-and-a-half for any excess hours over forty that they work per week. 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2. Defendants were subject to these laws during the time of plaintiffs' employment, and plaintiffs were covered employees. (Am. Compl. ¶¶ 73, 84).

If the employees ordinarily receive customer tips in the course of their employment, the employer may take a tip credit. 29 U.S.C. § 203(m); NYLL § 652(4); see also 12 N.Y. Comp. Codes R. & Regs. § 146-1.3. To be eligible for the tip credit,

8

however, the employer must first notify the employees of the requirements of the law regarding minimum wages and of the employer's intention to take the tip credit, that is, to include tip income when calculating wages actually paid for minimum-wage purposes. Ke v. Saigon Grill, Inc., 595 F. Supp.2d 240, 254 (S.D.N.Y. 2008). See also Kilgore v. Outback Steakhouse, 160 F.3d 294, 298 (6th Cir. 1998); Chung v. New Silver Palace Rest., 246 F. Supp.2d 220, 228-29 (S.D.N.Y. 2002). In this case, although plaintiffs received tips from their customers, there is no evidence that defendants ever provided the requisite notice to either plaintiff. (Am. Compl. ¶¶ 40, 56). Hence, plaintiffs' tip income cannot be applied to satisfy defendants' obligation to pay the minimum wage.

## 1. FLSA and NYLL Statute of Limitations

We first consider the time period for which plaintiffs seek compensation. The statute of limitations under NYLL extends six years. NYLL §§ 198(3), 663(3). Under the FLSA, the statute of limitations is two years, but may be extended to three years if the claim arises from a "willful" violation. 29 U.S.C. § 255(a). See also Ke, 595 F. Supp.2d at 258.

9

Plaintiffs allege that defendants' violations were willful. (See Am. Compl. ¶¶ 64, 66, 77, 81, 86, 91, 95). Some courts have held that a defendant's default establishes the truth of such a conclusory allegation. See, e.g., Pineda, 831 F. Supp.2d at 675 (citing Cao v. Wu Liang Ye Lexington Rest., Inc., 2010 WL 4159391, at *1 (S.D.N.Y. Sept. 30, 2010)); Wicaksono, 2011 WL 2022644, at *3. Since, however, willfulness is an element for measurement of potential damages and not liability, we view such allegations as subject to proof at an inquest. See, e.g., Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995); Granite Music Corp. v. Ctr. St. Smoke House, Inc., 786 F. Supp.2d 716, 735 (W.D.N.Y. 2011).

The willfulness requirement may be satisfied if the employer "showed reckless disregard for the matter of whether its conduct was prohibited by the statute." Ke, 595 F. Supp.2d at 258 (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)). Here, plaintiffs allege that defendants "willfully disregarded and purposefully evaded recordkeeping requirements" by failing to accurately track plaintiffs' hours and wages, in direct violation of FLSA and NYLL. (Am. Compl. ¶ 64). Moreover, plaintiffs allege that they repeatedly notified the individual defendant that they were not receiving appropriate minimum wages

or overtime pay, and never received any response to such complaints. (Galeana Aff. ¶¶ 19-20; Calixto Aff. ¶¶ 21-22). Defendants' actions thus demonstrate "reckless disregard" for federal and state law requirements, and amount to willfulness. See Moon v. Kwon, 248 F. Supp.2d 201, 231 (S.D.N.Y. 2002) (finding that defendant's knowing violations of FLSA and NYLL recordkeeping requirements amounted to willfulness for purposes of FLSA); Yang v. ACBL Corp., 427 F. Supp.2d 327, 337-38 (S.D.N.Y. 2005) (noting that defendant's knowing failure to pay appropriate overtime demonstrated willfulness under FLSA).

We further note that defendants' default in this case and their failure to participate in the proceedings will be taken as additional support for a finding of willfulness within the meaning of FLSA. See, e.g., Blue v. Finest Guard Servs. Inc., 2010 WL 2927398, at *11 (E.D.N.Y. June 24, 2010) ("Since the corporate defendant has failed to appear in court for this case, and a default judgment has [been] entered against it, its failure to pay plaintiffs' minimum wages is deemed to be willful."); Santillan v. Henao, 822 F. Supp.2d 284, 297 (E.D.N.Y. 2011) ("Many courts have found that a defendant's default, in itself, may suffice to support a finding of willfulness.").

Accordingly, since the original complaint was filed on September 21, 2010 (see Dkt. No. 1),[3] plaintiffs may recover minimum wages and overtime going back three years under federal law (September 21, 2007) and six years under state law (September 21, 2004).

### 2. Burden of Proof

In determining whether plaintiffs received the minimum wage and overtime pay, we begin with the premise that the employer is obligated to maintain records of wages and hours. See, e.g., Ke, 595 F. Supp.2d at 254 (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)). In the absence of documentation, the employees may rely on their own recollection to meet their initial burden. Ke, 595 F. Supp.2d at 254; Rivera v. Ndola Pharm. Corp., 497 F. Supp.2d 381, 388 (E.D.N.Y. 2007); Yang, 427 F. Supp.2d at 335-36.

In this case, defendants failed to provide plaintiffs with any statements documenting their hours worked or rate received for such hours (Am. Compl. ¶¶ 41, 57; Galeana Aff. ¶ 21; Calixto

---

[3]The statute of limitations for FLSA and NYLL claims is tolled as of the date the original complaint, not the amended complaint, was filed. See Moon, 248 F. Supp.2d at 232.

Aff. ¶ 23). Plaintiffs were also never required to track their hours worked, and never observed defendants tracking the hours they worked. (Am. Compl. ¶¶ 43, 59, 67; Galeana Aff. ¶¶ 24-25; Calixto Aff. ¶ 26-27). Accordingly, plaintiffs' damages will be calculated based on their recollection of the dates and hours they worked.

With the exception of the three weeks in July 2009 (during which time Galeana worked 42 hours per week, for $84 per week and $2.00 per hour), both plaintiffs worked between 73 and 84 hours per week during all relevant periods,[4] for which they were

---

[4]Although there may have been occasional periods when plaintiffs were not making deliveries (or when Calixto was not making deliveries or working on side duties), that does not change the result. Plaintiffs were expected to remain at the restaurant during these interstitial periods, and Calixto was also waiting to perform other services for the restaurant. (See Am. Compl. ¶¶ 34, 35, 47, 51; Galeana Aff. ¶¶ 10-11; Calixto Aff. ¶¶ 7, 11-12). As a legal matter, an employer must pay his employees for waiting time between tasks if the employees are expected to be ready whenever performance is required, 29 U.S.C. § 203(g); Moon, 248 F. Supp.2d at 229, since, as the Supreme Court has noted, "[r]eadiness to serve may be hired, quite as much as service itself . . . ." Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944). To avoid liability the employer must "definitely [tell the employee] in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived." 29 C.F.R. § 785.16(a); see also Ke, 595 F. Supp.2d at 256. Here, between deliveries, side work, and the need for plaintiffs to eat lunch and dinner, there is no evidence that plaintiffs were not working uninterrupted extended shifts from the time that they first reported to work until they left for home. See, e.g., Reich v. S. New England Telecomm.

paid $154 per week. (Galeana Aff. ¶¶ 9-11, 13-14; Calixto Aff. ¶¶ 10-13, 15). Defendants thus paid plaintiffs hourly wages ranging from $1.83 to $2.11, far below the federal and state statutory minimum[5], and plaintiffs are entitled to awards for unpaid minimum wage and overtime.

### 3. Minimum Wage Rates under FLSA and NYLL

During the time period relevant to this lawsuit, FLSA's minimum wage rate was $5.15 per hour through July 23, 2007, but climbed to $5.85 per hour on July 24, 2007, and to $6.55 per hour one year later. See 29 U.S.C. § 206; Fair Minimum Wage Act of 2007, Pub. L. No. 110-28 § 8102(a), 121 Stat. 112 (raising the minimum wage to $5.85 per hour, effective July 24, 2007, and to $6.55 per hour, effective July 24, 2008); see also Dong v. Ng, 2011 WL 2150544, at *4 (S.D.N.Y. March 8, 2011). New York's minimum wage rate tracked the federal minimum wage at the beginning of the relevant period, but increased annually beginning in 2005 until it reached $7.15 per hour on January 1, 2007. See NYLL § 652(1) (raising the minimum wage to $6.00 per

---

Corp., 121 F.3d 58, 65-66 (2d Cir. 1997); see also Chao v. Gotham Registry, Inc., 514 F.3d 280, 288 (2d Cir. 2008).

[5]See section III.A-3 below.

hour, effective January 1, 2005, to $6.75 per hour, effective
January 1, 2006, and finally to $7.15 per hour, effective
January 1, 2007). See also Dong, 2011 WL 2150544, at *4.


     Under 29 U.S.C. § 218(a), plaintiffs may recover the
minimum wage at the rate set by state or federal law, whichever
is greater. See Wicaksono, 2011 WL 2022644, at *3 (quoting Jiao
v. Chen, 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007)). See
also Cao, 2010 WL 4159391, at *2 n.2 ("[T]he higher of the FLSA
or the Labor Law minimum wage level shall be used to calculate
plaintiffs' damages for unpaid wages and overtime under the FLSA
and the Labor Law."). At all relevant times in this action, the
state minimum wage rate was equal to or higher than the federal
minimum wage rate. Accordingly, we apply the Labor Law minimum
wage rate in our calculations.


     **B.  Liquidated Damages on Wages and Overtime**


     Plaintiffs also seek to recover state-law liquidated
damages for claims arising prior to September 21, 2007, and
federal liquidated damages for claims arising on or after

September 21, 2007. (Mem. of Law sections II.B, II.D).[6] Under both the FLSA and NYLL, plaintiffs are entitled to liquidated damages if they have been denied appropriate minimum wages or overtime. 29 U.S.C. § 216(b), 260; NYLL § 198(1-a), 663(1).

Under the FLSA, a plaintiff who demonstrates that he was improperly denied either minimum wages or overtime may recover, in addition to reimbursement of unpaid wages, an amount equal to the unpaid wages (100%) unless the employer demonstrates that it acted in good faith and had reasonable grounds for believing that it had not violated the FLSA. 29 U.S.C. § 260. As the Second Circuit has observed, "the employer bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness . . . The burden, under 29 U.S.C. § 260, is a difficult one to meet, however, and 'double damages are the norm, single damages the exception.'" Reich, 121 F.3d at 71 (internal quotations omitted); accord Barfield v. New York City Health and Hospitals Corp., 537 F.3d 132, 150 (2d Cir. 2008); Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999).

---

[6]Although the last pay period for each plaintiff falls within both the FLSA and NYLL statutes of limitations, plaintiffs seek only federal liquidated damages for these final periods, and we proceed accordingly.

Here, defendants' default precludes a showing of good faith or reasonable belief that they acted in accordance with the law. See, e.g., Solis v. Tally Young Cosmetics, LLC, 2011 WL 1240341, at *18 n.15 (E.D.N.Y. Mar. 4, 2011), report and recommendation adopted, 2011 WL 1240108 (E.D.N.Y. Mar. 30, 2011) ("Where, as here, a defendant employer has defaulted, the court plainly cannot find that it has made the showing of good faith necessary to defeat an award of liquidated damages."). Moreover, as we have found, defendants' actions evinced a knowing and deliberate disregard for their legal obligations to track the employees' hours and wages, and thus they cannot avoid imposition of FLSA liquidated damages. See Cao, 2010 WL 4159391, at *6 (finding that defendants' willful disregard for whether or not their conduct was prohibited demonstrated a lack of good faith for purposes of FLSA).

As a separate matter, the New York Labor Law also authorizes an award of liquidated damages pursuant to several conditions. Until 2009, liquidated damages were imposed only if the employee demonstrated that his employer's violation was willful. See Ke, 595 F. Supp.2d at 261. Effective November 24, 2009, New York law incorporated the federal standard and shifted the burden of proof to the employer. 2009 N.Y. Sess. Laws ch.

17

372 §§ 1, 3 (McKinney); NYLL §§ 198(1-a), 663(1). On December 10, 2010, the New York legislature again amended NYLL §§ 198(1-a) and 663(1) to incorporate the federal standard, increasing the amount of available liquidated damages from 25% to 100% effective April 11, 2011. 2010 N.Y. Sess. Laws ch. 564 §§ 1, 3 (McKinney); NYLL §§ 198(1-a), 663(1).

Generally, "retroactive operation is not favored by New York courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it." Chenensky v. New York Life Ins. Co., 2012 WL 234374, at *3 (S.D.N.Y. Jan. 10, 2012) (quoting CFCU Cmty. Credit Union v. Hayward, 552 F.3d 253, 262 (2d Cir. 2009) (alteration omitted)). However, remedial amendments, defined as any amendment that "merely expand[s] the right to recover," Matter of City of New York (Long Is. Sound Realty Co.), 160 A.D. 2d 696, 697, 553 N.Y.S. 2d 789, 790 (2d Dept. 1990) (citing McKinney's Statutes § 54(a)), serve as an exception to this general rule against retroactive operation. CFCU Cmty. Credit Union, 552 F.3d at 262. Regardless, even with remedial statutes, "there must be a clear expression of legislative intent to apply a statute retroactively." Chenensky, 2012 WL 234374, at *3 (quoting id.).

The 2009 amendment "expands the right to recover" under NYLL § 198 and is therefore a remedial statute. See Mclean v. Garage Mgmt. Corp., 2012 WL 1358739, at *9 (S.D.N.Y. Apr. 19, 2012). However, we note first that section 4 of the text establishes the statute's prospective operation. 2009 N.Y. Sess. Laws ch. 372; Chenensky, 2012 WL 234374, at *3. Moreover, there are no other indicators suggesting a legislative intent to retroactively apply the statute. See Mclean, 2012 WL 1358739, at *9-10 (declining to apply the 2009 amendment retroactively due to the absence of an intent to do so, either in the statutory text or in the legislative history). Consequently, plaintiffs must demonstrate that defendants' violations were willful, and the applicable test for willfulness in this context appears to parallel that employed in determining willfulness for limitations purposes under the FLSA. See, e.g., Moon, 248 F. Supp.2d at 235. As noted, indications of willfulness in that context include a defendant's knowledge that his conduct is illegal or reckless disregard for whether it is statutorily prohibited, as well as a defendant's default and failure to participate in the proceedings. See McLaughlin, 486 U.S. at 133; Blue, 2010 WL 2927398, at *11. We have previously established that defendants had reckless disregard for FLSA and NYLL requirements, and that they were willful in failing to

19

participate in any portion of this case. Thus, defendants' willfulness for purposes of the NYLL's liquidated damages provisions is sufficiently demonstrated.

The 2011 amendment is a remedial statute as well. See Chenensky, 2012 WL 234374, at *3. As a result, one state court has observed that it should be applied retroactively. See Ji v. Belle World Beauty, Inc., No. 603228/08, 2011 N.Y. Misc. LEXIS 5032, at *6 (Sup. Ct. N.Y. Cty., Aug. 24, 2011). In Ji, the court concluded that remedial statutes should function retroactively as long as they do not "impair vested rights." Id. (citing McKinney's Statutes § 54). However, courts in this district have held that even if a remedial statute impairs vested rights, it still should not be retroactively applied unless there is a clear legislative intent to do so. See Mclean, 2012 WL 1358739, at *9 (citing CFCU Cmty. Credit Union, 552 F.3d at 262).

There is no indication in the text of the 2011 amendment, in the sponsor's memorandum, or in any previous drafts of the act of a legislative intent to apply the amendment retroactively. Wicaksono, 2011 WL 2022644, at *11 n.2 (citing 2010 N.Y. Sess. Laws ch. 564; N.Y. Spons. Memo, 2010 S.B. 8380

20

(Oct. 28, 2010); 2009 N.Y. S.B. 8380 (June 27, 2010)). See also Mclean, 2012 WL 1358739, at *10 ("To the contrary, the Sponsor's Memorandum suggests that the legislature intended to increase the NYLL's liquidated damages penalty to better deter future violations of the state's labor laws."). Thus, we agree with the other courts in this district, and decline to apply the 2011 amendment retroactively in the absence of a clear legislative intent to do so. Accordingly, the liquidated damages provisions under the New York Labor Law will be applied at the rate of 25%, the rate that existed at the relevant times of this action.

Hence, plaintiffs are entitled to liquidated damages at the state statutory rate of 25% on their minimum wage and overtime claims arising prior to September 21, 2007, and at the federal statutory rate of 100% on claims arising on or after September 21, 2007.

## C. Spread-of-Hours and Liquidated Damages on Spread-of-Hours

Plaintiffs further seek to recover compensation for so-called spread-of-hours and liquidated damages on those spread-of-hours. (Mem. of Law §§ II.A, II.D).

21

New York law contains a requirement that provides a basis for such an award, distinct from awards of unpaid minimum wage and overtime pay. Under the pertinent provisions, an employee whose workday is longer than ten hours must receive one hour's pay "at the basic minimum hourly wage rate." N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.4; Ke, 595 F. Supp.2d at 260. The measure of the workday for this purpose is the number of hours from the time the employee starts his work until he finishes, including both work time and non-working time. N.Y.C.R.R. tit. 12 §§ 142-2.4, 146-1.6. See also Chan v. Sung Yue Tung Corp., 2007 WL 313483, at *21 (S.D.N.Y. Feb. 1, 2007). The employee's entitlement to this compensation is in addition to any claim for minimum-wage payments or overtime. See, e.g., Ke, 595 F. Supp.2d at 260.

It has been established that both Galeana and Calixto were employed as delivery men for longer than ten hours per day and that Calixto was also completing side duties throughout the day, for a substantial portion of the pay periods. (Am. Compl. ¶¶ 34, 47, 51; Galeana Aff. ¶ 10; Calixto Aff. ¶¶ 7, 11). Accordingly, they are entitled to unpaid spread-of-hours awards.

Plaintiffs are also entitled to liquidated damages on the spread-of-hours under state law if the violation was willful. N.Y.L.L. § 198(1-a), 663(1). Since we have previously determined that defendants' violations of both federal and state law were willful, plaintiffs are entitled to liquidated damages equaling 25% of the total spread-of-hours compensation owed. See Gurung v. Malhotra, 851 F. Supp.2d 583, 593 (S.D.N.Y. 2012); Yang, 427 F. Supp.2d at 341.


### D.  The Awards


Finally, we turn to the awards based on the foregoing findings.


We agree with the methodology employed by plaintiffs' counsel in calculating plaintiffs' damages (Faillace Affm. ¶ 30(a-g)), but there are two errors in the spreadsheet cited as Exhibit J to Mr. Faillace's Affirmation. First, Mr. Faillace defined Calixto's last pay period as January 1, 2007 to November 17, 2007, and proceeded to calculate liquidated damages on wages and overtime, and pre-judgment interest on wages and overtime, in that period according to FLSA provisions. However, as explained in section III.A-1 supra, only the period beginning

23

September 21, 2007 is covered by FLSA. Thus, in our calculations we divide Calixto's last pay period into two segments -- 1) January 1, 2007-September 20, 2007 and 2) September 21, 2007-November 17, 2007. Accordingly, only claims from September 21, 2007 to November 17, 2007 will be eligible for liquidated damages under FLSA.

Second, as explained in section III.A-2 supra, plaintiffs are entitled to unpaid minimum wage and overtime awards for all pay periods at the state minimum wage rate, and federal liquidated damages in their last pay periods at the rate of 100%. In Mr. Faillace's spreadsheet, he calculated federal liquidated damages on the award of unpaid minimum wage and overtime pay as calculated under the state minimum wage rate. In fact, the federal liquidated damages rate of 100% must be applied to what would have been the award of unpaid minimum wage and overtime pay as calculated under the applicable federal minimum wage rate. E.g., Wicaksono, 2011 WL 2022644, at *7 (calculating federal liquidated damages on "the amount of actual damages that would have been awarded had the federal minimum wage rate applied."). Consequently, the federal liquidated damages for each plaintiff's final pay periods are calculated based on the amount of unpaid wages and overtime pay that

24

plaintiffs would have received under the federal minimum wage rate, and adjusted accordingly.

We thus recommend that plaintiffs be awarded the following:

### 1. Unpaid Wages and Overtime ("OT")

| Pay Period (Galeana) | No. of weeks per period | Hours per week in period | Lawful weekly pay | Credited weekly pay | Unpaid wages/OT |
|---|---|---|---|---|---|
| 9/21/04-12/31/04 | 14 | 84 | $545.90 | $154 | $5,486.60 |
| 1/1/05-12/31/05 | 52 | 84 | $636 | $154 | $25,064 |
| 1/1/06-4/30/06 | 17 | 84 | $715.50 | $154 | $9,545.50 |
| 7/1/09-7/22/09 | 3 | 42 | $307.45 | $84 | $670.35 |

| Pay Period (Calixto) | No. of weeks per period | Hours per week in period | Lawful weekly pay | Credited weekly pay | Unpaid wages/OT |
|---|---|---|---|---|---|
| 2/1/05-12/31/05 | 46 | 73 | $537 | $154 | $17,618 |
| 1/1/06-12/31/06 | 52 | 73 | $604.13 | $154 | $23,406.50 |
| 1/1/07-9/20/07 | 38 | 73 | $639.93 | $154 | $18,465.15 |
| 9/21/07- 11/17/07 | 8 | 73 | $639.93 | $154 | $3,887.40 |

Galeana is entitled to $40,766.45, and Calixto is entitled to $63,377.05, for a total award of $104,143.50 in unpaid wages and overtime.

## 2. Liquidated Damages on Wages and Overtime

| Pay Period (Galeana) | Unpaid wages/OT | Liquidated damages on wages/OT |
|---|---|---|
| 9/21/04-12/31/04 | $5,486.60 | $1,371.65 |
| 1/1/05-12/31/05 | $25,064 | $6,266 |
| 1/1/06-4/30/06 | $9,545.50 | $2,386.38 |
| 7/1/09-7/22/09 | $670.35 | $592.95 |

| Pay Period (Calixto) | Unpaid wages/OT | Liquidated damages on wages/OT |
|---|---|---|
| 2/1/05-12/31/05 | $17,618 | $4,404.50 |
| 1/1/06-12/31/06 | $23,406.50 | $5,851.63 |
| 1/1/07-9/20/07 | $18,465.34 | $4,616.29 |
| 9/21/07- 11/17/07 | $3,887.44 | $2,956.60 |

Galeana is entitled to $10,616.98 and Calixto is entitled to $17,829.02, for a total of $28,446 in liquidated damages on unpaid wages and overtime.

## 3. Spread-of-Hours ("SOH") and Liquidated Damages Thereon

| Pay Period (Galeana) | No. of weeks per period | No. of SOH days per week | Minimum wage rate | Unpaid SOH | Liquidated damages on SOH |
|---|---|---|---|---|---|
| 9/1/04-12/31/04 | 14 | 7 | $5.15 | $504.70 | $126.18 |
| 1/1/05-12/31/05 | 52 | 7 | $6.00 | $2,184 | $546 |
| 1/1/06-4/30/06 | 17 | 7 | $6.75 | $803.25 | $200.81 |
| 7/1/09-7/22/09 | 3 | | $7.15 | $0 | $0 |

| Pay Period (Calixto) | No. of weeks per period | No. of SOH Days per week | Minimum wage rate | Unpaid SOH | Liquidated damages on SOH |
|---|---|---|---|---|---|
| 2/1/05-12/31/05 | 46 | 6 | $6.00 | $1,656 | $414 |
| 1/1/06-12/31/06 | 52 | 6 | $6.75 | $2,106 | $526.50 |
| 1/1/07-9/20/07 | 38 | 6 | $7.15 | $1,630.20 | $407.55 |
| 9/21/07- 11/17/07 | 8 | 6 | $7.15 | $343.20 | $85.80 |

Galeana is entitled to $3,491.95 in unpaid spread-of-hours, and $872.99 in liquidated damages on spread-of hours, for a total of $4,364.94. Calixto is entitled to $5,735.40 in unpaid spread-of-hours, and $1,433.85 in liquidated damages on spread-of-hours, for a total of $7,169.25.

4. Pre-Judgment Interest on Wages and Spread-of-Hours

Plaintiffs also seek pre-judgment interest on their state law claims. (Mem. of Law § II.E). Generally, awards of federal liquidated damages serve as a form of compensatory pre-judgment interest. Ke, 595 F. Supp.2d at 261 (citing Herman, 172 F.3d at 142). For that reason, a plaintiff who receives FLSA liquidated damages may not also receive pre-judgment interest. Brock v. Superior Care, Inc., 840 F.2d 1054, 1064 (2d Cir. 1988) (citing Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 714-16 (1945)). In contrast, because state liquidated damages are punitive in nature, a plaintiff awarded this form of damages may also

27

recover pre-judgment interest. Ke, 595 F. Supp.2d at 262 (quoting Reilly v. NatWest Mkts. Grp., Inc., 181 F.3d 253, 265 (2d Cir. 1999)). See also Lin, 2009 WL 289653, at *7 ("The Second Circuit has held that even where a plaintiff is awarded liquidated damages under New York Labor Law, pre-judgment interest still is appropriate."). Accordingly, plaintiffs are entitled to pre-judgment interest on their minimum wage and overtime claims for pay periods prior to September 21, 2007 and all of their spread-of-hours claims, at the statutory interest rate of nine percent. See N.Y. C.P.L.R. § 5004. See also Santillan, 822 F. Supp.2d at 298-99 ("[S]ince the spread-of-hours pay is only covered under New York Labor Law, and not the FLSA, the entire period for which spread-of-hours pay was unpaid will be subject to prejudgment interest.").

Because the minimum wage, overtime and spread-of-hours awards for each plaintiff are divided into separate pay periods, interest is calculated pursuant to N.Y. C.P.L.R. § 5001(b) ("Where . . . damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."). For the purposes of calculating Galeana's pre-judgment interest, November 11, 2004 is the approximate midpoint for his

28

first pay period, July 2, 2005 for the second pay period, and March 2, 2006 for his third pay period. In calculating Calixto's pre-judgment interest, July 22, 2005 is the approximate midpoint for his first pay period, July 2, 2006 for the second pay period, May 12, 2007 for the third pay period, and October 20, 2007 for the final pay period. The end date for the purpose of calculation is the date of this Report and Recommendation, July 31, 2013. See, e.g., Carrasco, 2012 WL 2814112, at *6.

Accordingly, the plaintiffs are entitled to pre-judgment interest as follows:[7]

| Pay Period (Galeana) | Unpaid wages/OT | Unpaid SOH | PJI on wages/OT | PJI on SOH |
|---|---|---|---|---|
| 9/21/04-12/31/04 | $5,486.60 | $504.70 | $4,302.10 | $395.74 |
| 1/1/05-12/31/05 | $25,064 | $2,184 | $18,212.94 | $1,587.02 |
| 1/1/06-4/30/06 | $9,545.50 | $803.25 | $6,364.36 | $535.56 |
| 7/1/09-7/22/09 | $670.35 | $0 | Ineligible | $0 |

| Pay Period (Calixto) | Unpaid wages/OT | Unpaid SOH | PJI on wages/OT | PJI on SOH |
|---|---|---|---|---|
| 2/10/05-12/31/05 | $17,618 | $1,656 | $12,715.37 | $1,195.18 |
| 1/1/06-12/31/06 | $23,406.50 | $2,106 | $14,901.92 | $1,340.80 |
| 1/1/07-9/20/07 | $18,465.34 | $1,630.20 | $10,326.43 | $911.66 |
| 9/21/07- 11/17/07 | $3,887.44 | $343.20 | Ineligible | $178.30 |

---

[7] There is one error in Exhibit J to Mr. Faillace's Affirmation that is corrected in our chart: in Calixto's final pay period, he is entitled to pre-judgment interest on unpaid wages and overtime from January 1, 2007 to September 20, 2007, since he is receiving awards of unpaid wages, overtime, and liquidated damages only under state law.

Galeana is thus entitled to $28,879.40 in pre-judgment interest on unpaid wages and overtime, and $2,518.32 in pre-judgment interest on unpaid spread-of-hours, for a total of $31,397.72. Calixto is entitled to $37,943.72 in pre-judgment interest on unpaid wages and overtime, and $3,625.94 in pre-judgment interest on unpaid spread-of-hours, for a total of $41,569.66.

After July 31, 2013 and until judgment is entered on this matter, Galeana will be entitled to an additional $9.88 total in pre-judgment interest per day on wages and overtime ($1.35 for the first pay period, $6.18 for the second pay period, and $2.35 for the third pay period), and $.86 total in pre-judgment interest per day on spread-of-hours ($.12 for the first pay period, $.54 for the second pay period, and $.20 for the third pay period), and plaintiff Calixto will be entitled to an additional $14.66 total in pre-judgment interest per day on wages and overtime ($4.34 for the first pay period, $5.77 for the second pay period, and $4.55 for the third pay period), and $1.41 total in pre-judgment interest per day on spread-of-hours ($.41 for the first pay period, $.52 for the second pay period, $.40 for the third pay period, and $.08 for the fourth pay period).

### E. Remaining Requested Relief

#### 1. Attorney's Fees

Plaintiffs further request an award of attorney's fees of $12,175.00. (Faillace Affm. Ex. I at 2). Both federal and state law allow a successful plaintiff to recover reasonable attorneys' fees. 29 U.S.C. § 216(b); NYLL §§ 198, 215, 663(1). Under the FLSA, "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of . . . a reasonable attorney's fee to be paid by the defendant." 29 U.S.C. § 216(b). Similarly, under the NYLL, "[i]n any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover . . . all reasonable attorney's fees . . . ". NYLL § 198(1)(a).

District courts have broad discretion in determining reasonable attorneys' fees, see Hensley v. Eckerhart, 461 U.S. 424, 437 (1983), and the standard method for determining the amount involves calculation of the "lodestar" figure. See, e.g., Blanchard v Bergeron, 489 U.S. 87, 87 (1989). Under the lodestar

31

approach, "the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate for attorneys and paraprofessionals." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992). See also Cablevision Sys. New York City Corp. v. Lokshin, 980 F. Supp. 107, 115 (E.D.N.Y. 1997) (citing Hensley, 461 U.S. at 434).

### a. Reasonable Rate

Plaintiffs' attorneys seek hourly rates of $450 for attorney Michael Faillace, and $250 for attorney Yolanda Rivero. (See Faillace Affm. Ex. I at 1-2). In determining whether an hourly rate is reasonable, the Second Circuit has observed that the court should apply the prevailing rate within the district for similar services by lawyers of comparable experience and skill. Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)). Additionally, the court may consider rates approved in prior cases and the court's own knowledge of reasonable rates in the district. See, e.g., Farbotko v. Clinton Cnty., 433 F.3d 204, 209 (2d Cir. 2005) (citations omitted).

In his affirmation, Mr. Faillace explains that he is the managing member of his firm, was retained as in-house employment counsel for IBM from 1983-2000, had taught employment discrimination at Seton Hall University Law School from 1995-1998, is currently teaching employment discrimination at Fordham University School of Law, and is a prominent speaker and writer on employment law (Faillace Affm. ¶ 30(i)). He also asserts that attorney Rivero has been practicing law since 1998, and has focused her practice on FLSA claims since 2006. (Faillace Affm. ¶ 30(i)).

However, the rate of $450 sought by attorney Faillace is on the higher end of the range of rates received by similarly-experienced employment law attorneys in this district. See Gurung, 851 F. Supp.2d at 597 ("Courts in this District have determined in recent cases that the range of appropriate fees for experienced civil rights and employment law litigators is between $250 and $450."). See also Flores v. J & B Club House Tavern, Inc., 2012 WL 4891888, at *3 (S.D.N.Y. Oct. 16, 2012) (awarding $250 per hour to an attorney who had been in practice since 1991); Agudelo v. E & D LLC, 2013 WL 1401887, at *2 (S.D.N.Y. Apr. 4, 2013) (holding that $350 per hour is not an unreasonable fee for an attorney with fifteen years of

experience in labor law); Kahlil v. Original Old Homestead Restaurant, Inc., 657 F. Supp.2d 470, 476 (S.D.N.Y. 2009) (awarding $400 per hour to an attorney with twenty-five years of experience specializing in labor and employment law); Chen v. TYT East Corp., 2013 WL 1903735, at *3 (S.D.N.Y. May 8, 2013) (finding that $400 per hour is a reasonable fee for two attorneys with decades of commercial litigation experience).

We therefore find it appropriate to reduce the hourly rate sought by attorney Faillace to $425. This rate also reflects the relatively straightforward procedure of this case and the absence of novel or complex issues arising from the claims. See Angamarca v. Pita Grill 7 Inc., 2012 WL 3578781, at *13 (S.D.N.Y. Aug. 2, 2012) (awarding Mr. Faillace his requested hourly rate of $450, but reducing attorney's fees overall by 15% in light of the straightforward substance and procedure of the case); Wong v. Hunda Glass Corp., 2010 WL 3452417, at *3 (S.D.N.Y. Sept. 1, 2010) (reducing the requested hourly rate to $350 per hour based on the straightforward nature of the case). Furthermore, the reduced hourly rate also takes into account the failure of plaintiffs to provide support for the hourly rate sought with information about what their attorneys normally charge. Contra, e.g., Allende v. Unitech Design, Inc., 783 F.

34

Supp.2d 509, 514 (S.D.N.Y. 2011) (awarding $450 per hour to an attorney who had demonstrated that $450 was her regularly-charged rate, and that her firm was "well-known" and "highly respected"); Barbour v. City of White Plains, 788 F. Supp.2d 216, 225 (S.D.N.Y. 2011) (awarding $625 per hour to an attorney who had provided extensive support in his affirmation that $625 was a rate commonly charged by other similarly experienced attorneys).

As a junior associate at the firm who has been focusing on FLSA claims since 2006, Ms. Rivero is entitled to the requested rate of $250 per hour. See Gurung, 851 F. Supp.2d at 597 (awarding two junior associates at Gibson Dunn, who had graduated from law school in 2009, $275 per hour).

Therefore, plaintiffs are entitled to recover fees for Mr. Faillace's work at the rate of $425 per hour, and for Ms. Rivero's work at $250 per hour.

### b. Number of Hours Expended

We next turn to the reasonableness of the hours for which plaintiffs seek compensation for their attorneys. In support of

such an application the moving party must not only proffer an affidavit of counsel specifying the amount of time for which his client seeks such an award and the basis for the claimed hourly rate, but must also support the application with adequately detailed contemporaneous time records. Dong, 2011 WL 2150544, at *8 (citing Local 335, United Serv. Workers Union, IUJAT v. Roselli Moving & Storage Corp., 2010 WL 3283553, at *2 (E.D.N.Y. July 20, 2010), report and recommendation adopted, 2010 WL 3257792 (Aug. 13, 2010)). Importantly, documented hours that the court deems "excessive, redundant, or otherwise unnecessary" should be excluded from the calculation. Gierlinger, 160 F.3d at 876 (quoting Hensley, 461 U.S. at 434).

In this case plaintiffs have provided the court with their attorneys' contemporaneous time records, and seek compensation for 20 hours of work completed by Mr. Faillace and 12.7 hours completed by Ms. Rivero. None of the hours documented are for duplicative or purely clerical work. Contra, e.g. Allende, 783 F. Supp.2d at 515 (reducing legal fees sought by 7% for duplicative billing); Kahlil, 657 F. Supp.2d at 476 (reducing attorneys' fees and costs sought by 15% for excessive and vague billing, and for time spent on purely clerical tasks); Gurung, 851 F. Supp.2d at 598 (reducing legal fees sought by 25% because

36

of duplicative billing). Moreover, the total number of hours devoted to this case is modest and seems reasonable to accomplish what needed to be done to achieve success for their clients. Accordingly, plaintiffs are entitled to recover attorneys' fees for all 32.7 hours documented.

Thus we recommend that the court award plaintiffs $8,500 for attorney Faillace's work and $3,175 for attorney Rivero's work, for a total of $11,675.

### 2. Costs

The FLSA and New York Labor Law also provide for costs to a successful plaintiff. 29 U.S.C. § 216(b); NYLL § 663(1). See also Barfield, 537 F.3d at 151; Alejo v. Darna Restaurant, 2010 WL 5249383, at *6 (S.D.N.Y. Dec. 17, 2010); Chen, 30 F. Supp.2d at 625. Mr. Faillace states that costs related to the action were $570, which includes a $350 filing fee for the complaint and $220 for serving each defendant twice. (See Faillace Affm. Ex. I at 2). We take judicial notice of the court's own filing fee amount, and we find the $220 in additional costs to be reasonable. See, e.g., Wicaksono, 2011 WL 2022644, at *11;

37

<u>Greathouse v. JHS Sec.</u>, 2012 WL 3871523, at *12 (S.D.N.Y. Sept. 7, 2012).

### F.  <u>Joint and Several Liability of Defendants</u>

To be held liable under the FLSA, a person must be an "employer," a term defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §§ 203(d), 207(a)(1); <u>Herman</u>, 172 F.3d at 139.[8] To be held liable as an "employer" under NYLL, a person must employ any employee. NYLL §§ 2(6), 651(6). The Second Circuit has acknowledged that the definition of an employer should be broadly construed under FLSA. <u>Herman</u>, 172 F.3d at 139 (quoting <u>Carter v. Dutchess Cmty. Coll.</u>, 735 F.2d 8, 12 (2d Cir. 1984)). <u>See also</u> <u>Falk v. Brennan</u>, 414 U.S. 190, 195 (1973). Likewise, courts in this district have applied expansive interpretations of an employer for the purposes of NYLL. <u>See</u> <u>Yang</u>, 427 F. Supp.2d at 342. Under both federal and state law, the test of whether someone qualifies as an employer rests on

---

[8] To qualify for unpaid wages and overtime under FLSA, the employee or employer must also be "engaged in interstate commerce or in the production of goods for interstate commerce," 29 U.S.C. § 207(a); <u>Shim v. Millennium Grp.</u>, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009), and the employer's enterprise must produce over $500,000 in revenue, 29 U.S.C. § 203(1)(a)(ii). Plaintiffs have sufficiently satisfied those requirements with well-pleaded allegations. (Am. Compl. ¶¶ 24-25).

the "economic reality" of the relationship between the individual defendant and the business. See generally id. (quoting Herman, 172 F.3d at 139) (additional quotations omitted). See also Nakahata v. New York-Presbyterian Health Care System, 2012 WL 3886555, at *14 n.9 (S.D.N.Y Sept. 6, 2012) (quoting Cannon v. Douglas Elliman, LLC, 2007 WL 4358456, at *4 (S.D.N.Y. Dec. 10, 2007) (citing cases)).

Relevant factors under this "economic reality" standard include whether a defendant has the power to hire and fire the employees, whether he supervises or controls their work schedule and performance, whether he determines their compensation and the methods of payment and whether he maintains employment records. Herman, 172 F.3d at 139 (quoting Carter, 735 F.2d at 12). The list of factors is not exhaustive; rather, whether a particular individual is an "employer" under FLSA is determined based on the "totality of the circumstances". Herman, 172 F.3d at 139. Also, the plaintiff need not satisfy all of the factors to demonstrate that a particular defendant is an employer. See, e.g., Barfield, 537 F.3d at 138 (citing Zheng v. Liberty Apparel Co., 355 F.3d 61, 71-72 (2d Cir. 2003)).

Given the expansiveness of the definition of "employer," an employee may have more than one employer for purposes of FLSA. Moon, 248 F. Supp.2d at 236-37 (citing Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983)). According to the Department of Labor's regulations on FLSA, if an employee "performs work which simultaneously benefits two or more employers, or works at two or more employers at different times during the workweek," he is deemed to be working for joint employers. Moon, 248 F. Supp.2d at 237 (quoting 29 C.F.R. § 791.2(b)). If the employee is found to be jointly employed by more than one employer, then "all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of [FLSA]." Moon, 248 F. Supp.2d at 237 (quoting 29 C.F.R. § 791.2(a)). Similarly, an individual may simultaneously have several employers for purposes of NYLL. See Lin, 2009 WL 289653, at *9.

Here, defendant Hann Low clearly served as plaintiffs' joint employer along with Lemongrass on Broadway Corporation. The complaint alleges that Hann Low controlled and operated the defendant corporation. As such, he helped determine the compensation for plaintiffs, create their work schedules, maintain their employee records, and hire and fire plaintiffs

and other employees of the corporate defendant. (Am. Compl. ¶¶ 17-19, 22-23). Accordingly, we conclude that Hann Low was plaintiffs' employer under federal and state law, and thus he and Lemongrass on Broadway Corporation are jointly and severally liable for the amount of the judgment, including pre-judgment interest, and attorney's fees and costs.

## CONCLUSION

For the foregoing reasons, we recommend that judgment be entered in plaintiffs' favor against defendants, jointly and severally, as follows: Galeana should be awarded $55,748.37 in damages and Calixto should be awarded $88,375.32 in damages, plus pre-judgment interest as set forth herein. We further recommend that plaintiffs be awarded $12,245 in attorneys' fees and costs.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable George B. Daniels,

Room 630, and to the chambers of the undersigned, Room 1670, U.S. Courthouse, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See 28 USC § 636(b)(1); Fed. R. Civ. Pro. 72, 6(d); Thomas v Arn, 474 U.S. 140, 150-55 (1985), reh'g denied, 474 U.S. 1111 (1986); DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)).

Dated: New York, New York
       July 31, 2013

_____
MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE

Copies of this Report and Recommendation are being sent today to:

Michael Antonio Faillace, Esq.
Michael Faillace & Associates, P.C.
110 East 59th Street, 32nd Floor
New York, NY 10022

Lemongrass on Broadway Corporation
2534 Broadway
New York, NY 10025

Mr. Hann Low
2534 Broadway
New York, NY 10025